1   VINCENT H. CHIEFFO (SBN 49069)
2   RAYMOND B. KIM (SBN 162756)
    WENDY M. MANTELL (SBN 225544)
3   GREENBERG TRAURIG, LLP
    2450 Colorado Avenue, Suite 400E
    Santa Monica, California 90404
4   Telephone: (310) 586-7700
5   Facsimile: (310) 586-7800
    ChieffoV@gtlaw.com; KimR@gtlaw.com;
6   MantellW@gtlaw.com

7   Attorneys for Plaintiff
8   Aurora World, Inc.

9

10

11                  UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13
    AURORA WORLD, INC.,              CASE NO.  CV09-8463 MMM (Ex)
14
              Plaintiff,
15                                   **AURORA WORLD, INC.'S NOTICE
                                     OF MOTION AND MOTION FOR
16  vs.                             PRELIMINARY INJUNCTION;
                                     MEMORANDUM OF POINTS AND
17  TY, INC.,                        AUTHORITIES**

18            Defendants.
                                     [Filed concurrently with Declarations of
19                                   Monica Fitzhugh, Michael Kessler and
20                                   Wendy M. Mantell, and [Proposed]
                                     Injunction]
21

22                                   Date:  TBD
23                                   Time:  TBD
                                     Courtroom: 780
24                                   Judge: Hon. Margaret M. Morrow

25

26

27

28
    ─────────────────────────────────────────────────
          **AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
    LA 128,525,695v7 11-19-09

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 2
      A.    Aurora World's YooHoo & Friends Plush Toys............................ 2
      B.    Aurora World's Copyrights, Trademark, and Trade Dress............ 5
      C.    Ty's Infringing Beanie Boos. ....................................................... 6
      D.    Ty's Infringing Beanie Boos Are Causing Actual Consumer
            Confusion. ..................................................................................... 7
      E.    Aurora World's Request to Cease and Desist Infringement and
            Ty's Refusal to Do So. .................................................................. 7
      F.    Ty Is Causing Aurora World Irreparable Harm. .......................... 8
      G.    Plaintiffs' Commencement of This Lawsuit ................................ 8

III.  LEGAL ARGUMENT .............................................................................. 9
      A.    Legal Standards for Granting a Preliminary Injunction. .............. 9
      B.    Aurora World Is Likely to Succeed on Its Claim For Copyright
            Infringement. ................................................................................ 10
            1.    Aurora World Owns Valid Copyright Registrations. .......... 10
            2.    Ty Copied Constituent Elements of the YooHoo & Friends
                  Toys. ................................................................................... 11
                  (a)   Ty Had Access to Aurora World's YooHoo & Friends
                        Products. ................................................................... 11
                  (b)   Ty's Beanie Boos Are Substantially Similar to Aurora World's
                        YooHoo & Friends. .................................................... 12
      C.    Aurora World Is Likely to Succeed on Its Claim For Violation of the
            Lanham Act. .................................................................................. 15
            1.    Aurora World's YooHoo Trade Dress Is Nonfunctional. ..... 16
            2.    Aurora World's YooHoo Trade Dress Has Acquired
                  Secondary Meaning. ............................................................ 17
            3.    Ty's Beanie Boos Are Likely To Be Confused With Aurora
                  World's YooHoo & Friends Plush Toys. .............................. 18
      D.    Aurora World Is Likely to Succeed on Its Statutory and Common
            Law Unfair Competition Claims. .................................................. 20
      E.    Aurora World Is Likely to Succeed on Its Claim for Common Law
            Misappropriation. ......................................................................... 21
      F.    Aurora World is Suffering Irreparable Harm As a Result of Ty's
            Wrongful Conduct. ....................................................................... 22

i

G.     The Balance of Hardships Favors Aurora World.......................... 24
H.     A Preliminary Injunction Enjoining Ty From Continuing to Engage in
       Wrongful and Infringing Conduct Serves the Public Interest...................... 24

IV.   CONCLUSION.................................................................................. 25

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

Page No.

## Federal Cases

*A&A Plush, Inc. v. SKM (USA) Enters. Inc.,*
   No. CV-97-1113, 1998 WL 441471 at *8 n.8 (C. D. Cal. April 15, 1998) .................. 11

*Aliotti v. R. Dakin & Co.,*
   831 F.2d 898 (9th Cir. 1987) ......................................................................... 12, 13

*AMF, Inc. v. Sleekcraft Boats,*
   599 F.2d 341, 346 (9th Cir. 1979) ......................................................................... 18

*Apple Computer, Inc. v. formula Int'l, Inc.,*
   725 F.2d 521 (9th Cir. 1984) ......................................................................... 18, 22

*Apple Computer, Inc. v. Franklin Computer Corp.,*
   714 F.2d 1240 (3rd Cir. 1983) ......................................................................... 24

*Apple Computer, Inc. v. Microsoft Corp.,*
   35 F.3d 1435 (9th Cir. 1994) ......................................................................... 12

*Apple Inc. v. Psystar Corp.,* --
   F. Supp. 2d --, No. C08-0321, 2009 WL 3112080, at *3 (N.D. Cal. Sep. 23,
   2009) ......................................................................................................... 23

*AT&T Corp. v. Vision One Security Sys.,*
   No. 95-0565, 1995 WL 476251, at *7 (S.D. Cal. July 27, 1995) ................................ 25

*Atlanta School of Kayaking, Inc. v. Douglasville-Douglas Cty Water and Sewer
   Auth.,*
   981 F. Supp. 1467 (N.D. Ga. 1997) ......................................................................... 9

*Cavalier v. Random House, Inc.,*
   297 F.3d 815 (9th Cir. 2002) ......................................................................... 12

*Century 21 Real Estate Corp. v. Sandlin,*
   846 F.2d 1175, 1178 (9th Cir. 1988) ......................................................................... 20

*City Solutions Inc. v. Clear Channel Commc'ns, Inc.,*
   365 F.3d 835 (9th Cir. 2004) ......................................................................... 21

*Clamp Mfg. Co. v. Enco Mfg. Co.,*
   870 F.2d 512 (9th Cir. 1989), cert. den., 493 U.S. 872 (1989) .................................. 17

i

*Conwest Resources, Inc. v. Playtime Novelties, Inc., No.,* C
  06-5304, 2006 WL 3346226, at *3  (N.D. Cal. 2006) ............................................... 9

*Coquico, Inc. v. Rodriguez-Miranda,*
  562 F.3d 62 (1st Cir. 2009) ............................................................................. 13

*Cort v. St. Paul Fire & Marine Ins. Cos.,*
  311 F.3d 979 (9th Cir. 2002) .......................................................................... 20

*Dollcraft Indus., Inc. v. Well-Made Toy Manufacturing Company,*
  479 F. Supp. 1105 (E.D.N.Y. 1978) ................................................................ 14

*Dr. Seuss Enters. v. Penguin Books USA, Inc.,*
  109 F.3d 1394 (9th Cir. 1997) ......................................................................... 9

*eBay v. MercExchange, LLC,*
  547 U.S. 388 (2006) ...................................................................................... 22

*Electropix, Inc. v. Liberty Livewire Corp.,*
  178 F. Supp. 2d 1125 (C.D. Cal. 2001) .......................................................... 19

*Entertainment Research group, Inc. v. Genesis Creative Group, Inc.,*
  122 F.3d 1211 (9th Cir. 1997) ........................................................................ 10

*Faberge, Inc. v. Saxony Products, Inc.,*
  605 F.2d 426 (9th Cir. 1979) .......................................................................... 17

*Fabrica Inc. v. El Dorado Corp.,*
  697 F.2d 890 (9th Cir. 1983) .......................................................................... 16

*Feist Publ'ns  Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) ...................................................................................... 10

*First Brands v. Fred Meyer,*
  809 F.2d 1378 (9th Cir. 1987) ........................................................................ 17

*GoTo.com, Inc. v. The Walt Disney Co.,*
  202 F.3d 1199, 1205 ...................................................................................... 18

*Gucci Timepieces America, Inc. v. Yidah Watch Co.,*
  No. CV-97-6985, 1998 WL 650078, at *6 (C.D. Cal. Aug. 4, 1998) ..................... 15, 16

*Gund, Inc. v. Russ Berrie and Co.,*
  701 F. Supp. 1013 (S.D.N.Y. 1988) ................................................................ 14, 23

*Harper & Row, Publishers Inc., v. Nation Enters.,*
  471 U.S. 539 (1985) ...................................................................................... 10

*International Jensen, Inc. v. Metrosounds U.S.A., Inc.,*
  4 F.3d 819 (9th Cir. 1993) ............................................................................. 16

TABLE OF AUTHORITIES

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.,*
    559 F.3d 985 (9th Cir. 2009) ............................................................ 25

*Jacobsen v. Katzer,*
    535 F.3d 1373 (Fed. Cir. 2008) ........................................................ 22

*Kamar Int'l v. Russ Berrie & Co.,*
    657 F.2d 1059 (9th Cir. 1981) .................................................... 11, 12

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*
    285 F.3d 848, 854 (9th Cir. 2002) .................................................... 20

*Kyjen Co., Inc. v. Vo-Toys, Inc.,*
    223 F. Supp. 2d 1065 (C.D. Cal. 2002) ............................................ 13

*LGS Architects, Inc. v. Concordia Homes,*
    434 F.3d 1150 (9th Cir. 2006) ............................................................ 9

*Medias & Co., Inc. v. Ty, Inc.,*
    106 F. Supp. 2d 1132 (D. Colo. 2000) .............................................. 14

*Ocean Garden, Inc. v. Marktrade Co., Inc.,*
    953 F.2d 500 (9th Cir. 1991) ............................................................ 16

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,*
    684 F.2d 821 (11th Cir. 1982) .......................................................... 14

*Paulsson Geophysical Servs., Inc. v. Sigmar,*
    529 F.3d 303 (5th Cir. 2008) ............................................................ 22

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,*
    562 F.2d 1157 (9th Cir. 1977) .................................................... 10, 11

*Smith v. Montoro,*
    648 F.2d 602, 605 & n.3 (9th Cir. 1981) .......................................... 15

*Sony Computer Entertainment America, Inc. v. Gamemasters,*
    87 F. Supp. 2d 976 (N.D. Cal. 1999) ................................................ 18

*Stormans, Inc. v. Selecky,*
    --F.3d --,  No. 07-36039, 2009 WL 3448435, at *13 (9th Cir. 2009) ............ 9

*Three Boys Music Corp. v. Bolton,*
    212 F.3d 477 (9th Cir. 2000) ............................................................ 11

*Toho Co. v. Sears, Roebuck & Co.,*
    645 F.2d 788 (9th Cir. 1981) ............................................................ 21

*Transgo, Inc., v. Ajac Transmission Parts Corp.,*
    768 F.2d 1001 (9th Cir. 1985) .......................................................... 17

*Triad Sys. Corp. v. Southeastern Express Co.*,
  64 F.3d 1330 (9th Cir. 1995) ..................................................................... 22

*Twentieth Century-Fox Film Corp. v. Stonesifer*,
  140 F.2d 579 (9th Cir. 1944) ..................................................................... 13

*Ty, Inc. v. GMA Accessories, Inc.*,
  132 F.3d 1167 (7th Cir. 1997) ................................................................... 15

*United States Olympic Comm. v. Xclusive Leisure & Hospitality Ltd.*,
  No. C 08-03514, 2008 WL 3971120, at * 10 (N.D. Cal. Aug 25, 2008) ..................... 22

*Vision Sports, Inc. v. Melville Corp.*,
  888 F.2d 609 (9th Cir. 1989) ......................................................... 15, 17, 18

*Wal-Mart Stores, Inc., v. Samara Bros., Inc.*,
  529 U.S. 205 (2000) ................................................................................ 15

*Wildlife Express Corp. v. Carol Wright Sales*,
  18 F.3d 502 (7th Cir. 1994) ...................................................................... 14

*Winter v. Natural Res. Def. Council, __ U.S. __*,
  129 S. Ct. 365 (2008) ............................................................................... 9

## State Cases

*Bank of the West v. Superior Court*,
  2 Cal. 4th 1254 (1992) ....................................................................... 20, 21

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................ 20

*United States Golf Ass'n. v. Arrongo Software Corp.*,
  69 Cal. App. 4th 607 (1999) ..................................................................... 21

## Statutes

17 U.S.C. § 410(c) ...................................................................................... 12

California Business and Professions Code § 17200 ..................................... 9, 20

## Rules

Federal Rule of Civil Procedure 65 ......................................................... passim

TABLE OF AUTHORITIES

LA 128.525.695v7 11-19-09

**PLEASE TAKE NOTICE** that on December 14, 2009, at 10:00 a.m. or as soon thereafter as this Motion may be heard pursuant to an *Ex Parte* Application filed concurrently with this Motion, in courtroom 780 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, CA , plaintiff Aurora World, Inc. ("Aurora World" or "Plaintiff") will and hereby does move for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1, enjoining and restraining defendant Ty Inc. ("Ty" or "Defendant") from further exploitation of its Beanie Boo line of plush toys that infringe the copyright and trade dress of Aurora World's YooHoo & Friends line of plush toys.

Specifically, through this motion, Plaintiff seeks issuance of a preliminary injunction against Defendant Ty, Inc. ("Ty") and its corporate parents, subsidiaries and affiliate entities and all of their directors, officers, agents, servants, employees, representatives, and all other persons or entities acting on their behalf or in concert or participation with them are hereby enjoined and restrained from:

(a)     selling, attempting to sell, offering to sell, causing to be sold, permitting any other individual or entity to sell, copying, reproducing, preparing derivative works of, publishing, displaying (either on a website or otherwise), disseminating, distributing, circulating, promoting, marketing, advertising, or in any way commercially exploiting the Beanie Boo products, as well as any and all other products that are unlawful and unauthorized copies of or confusingly similar to the YooHoo & Friends products;

(b)     engaging in any further conduct suggesting or tending to suggest that the Beanie Boo products or any other Ty products are directly or indirectly sponsored by, approved by, or affiliated with Plaintiff; and

(c)     engaging in any further acts conveying the impression to the public by its displays, marketing, advertising, packaging, displays, or otherwise that the Beanie Boo products or any other Ty products are directly or indirectly sponsored by, approved by, or affiliated with Plaintiff.

1

    This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Monica Fitzhugh, Michael Kessler and Wendy M. Mantell and all exhibits attached and filed concurrently herewith, the [Proposed] Preliminary Injunction lodged concurrently herewith, and upon such other and further evidence and argument as may be presented to the Court prior to or at the time of hearing on this motion.


DATED: November 19, 2009                    GREENBERG TRAURIG LLP

                                            By: _____
                                                Vincent H. Chieffo
                                                Raymond B. Kim
                                                Wendy M. Mantell

                                                Attorneys for Plaintiff
                                                Aurora World, Inc.

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
LA 128,525,695v7 11-19-09

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Through this motion, plaintiff Aurora World, Inc. ("Plaintiff" or "Aurora World") seeks a preliminary injunction against defendant Ty Inc. ("Defendant" or "Ty") preventing Ty from continuing to engage in infringing activities relating to Aurora World's unique and highly successful line of YooHoo & Friends plush toys and products.

Aurora World is one of the world's leading plush toy companies. In late 2006/ early 2007, Aurora World introduced a new line of unique, stylized plush toys beginning with a character it called YooHoo, and expanding into the brand now known as YooHoo & Friends. The YooHoo & Friends characters possess a distinctive look and feel, characterized by large heads, specially-tooled and designed large round eyes with large black pupils and colored borders, and recognizable stitching patterns, expressions, and color elements. YooHoo & Friends met with instant success and have expanded into non-plush items such as stationery and key chains, as well as an animation series broadcast in Korea and countries in Europe and the Middle East. The YooHoo & Friends products have generated significant sales and are one of Aurora World's hottest marquee brand products.

Aurora World has recently become aware that defendant Ty has been creating, offering for sale, and selling an infringing plush toy product line called Beanie Boos. The Beanie Boos are plush animals that contain the same distinctive eye styling, coloring, stitching patterns, posture, expressions, and overall look and feel as Aurora World's YooHoo & Friends. Not only does Defendant's conduct constitute clear copyright infringement of Aurora World's copyrighted work, it is also trade dress infringement, misappropriation, and unfair competition and the very type of wrongful conduct that these statutory and common law claims are meant to address.

A side-by-side comparison of the plush animals and the facts of this case clearly reveal that Aurora World is likely to succeed on the merits of its claims against Ty. Ty's

1

Beanie Boos are remarkably similar to Aurora World's YooHoo & Friends (which, as one plush toy collector has noted, "goes beyond mere coincidence") and are likely to cause, and in fact already have caused, confusion in the minds of the public and customers, all to Aurora World's immediate and substantial detriment. Ty's wrongful conduct also carries the danger of significant and irreparable injury to Aurora World. By marketing and selling a confusingly similar and infringing product, Ty is essentially seeking to use its clout as one of the dominant players in the plush toy market to crowd out Aurora World's YooHoo & Friends products during the crucial holiday season. The impact of such improper tactics not only affects holiday sales, but perhaps even more importantly, will continue to have major implications on Aurora World's ability to continue to develop its YooHoo & Friends products in the upcoming year and beyond. Finally, the public interest in protecting consumers, and particularly children and adults buying gifts for children, from Defendant's bad faith actions also is served by the issuance of a preliminary injunction. Seeking to exploit Aurora World's hard work and efforts to its own advantage, Ty's marketing and sale of the Beanie Boos are clearly meant to piggyback on the success of YooHoo & Friends by deceiving the public. No legitimate policy is served by allowing such actionable conduct to continue.

While Ty will likely attempt to defend its conduct by highlighting minute differences between the products, it is apparent to the plain eye that the striking similarities overwhelm any such contrived distinctions. For these reasons, Plaintiff respectfully requests that this motion be granted and that a preliminary injunction be issued against Defendant in this case.

## II.

## STATEMENT OF FACTS

### A.  Aurora World's YooHoo & Friends Plush Toys.

Aurora World is one of the world's leading companies for high-end, soft toy designs in the global gift industry. Declaration of Michael Kessler ("Kessler Decl."), ¶ 2. Since its establishment, the company has focused on its top quality and innovative design

2

for both play and collectable toys.  Declaration of Monica Fitzhugh ("Fitzhugh Decl."), ¶ 2.

In late 2006, early 2007, Aurora World began developing its YooHoo & Friends brand of plush toy characters.  Fitzhugh Decl., ¶¶ 3-5.  To help market YooHoo & Friends, Aurora World also developed a virtual world called Yootopia in which the YooHoo & Friends characters live.  *Id.*, ¶ 7, Exh. B.  The characters, including the "YooHoos" and others, are based on animals, some of which are endangered species.  *Id.*, ¶¶ 6-7 & Exh. B.

The YooHoo & Friends characters include, among others:



Bush Babies          Panda          Penguin          Koala

*Id.*, Exh. B.  Aurora World also has created and sold specialty YooHoo & Friends products for particular holidays or events, such as Easter, Valentine's Day, and school graduation.  *Id.*, ¶ 9, Exh. C.

In addition to plush toys, the YooHoo & Friends products include a website,  an animation series currently on the air in several international markets and planned for the United States market, and other non-plush peripheral items such as stationery and key chains.  *Id.*, ¶ 10.  Aurora World also is pursuing co-marketing opportunities with several nationwide retail chains and recreation sites to expand its successful YooHoo & Friends brand.  *Id.*

Since launching the YooHoo & Friends brand, Aurora World has been engaged in the business of designing, manufacturing, developing, and marketing the YooHoo & Friends characters.  *Id.*, ¶ 11.  The YooHoo & Friends products have been sold

1  throughout the world, in Korea, the United Kingdom, and Saudi Arabia, among other
2  places, and throughout the United States. *Id.*

3        Aurora World has spent substantial time, energy and effort creating and promoting
4  YooHoo & Friends.  For example, Aurora World has appeared at trade shows, advertised
5  in trade magazines, and spent over $250,000 building its promotional website, located at
6  www.yoohoofriends.com.  Fitzhugh Decl., ¶ 12; Kessler Decl., ¶ 4.  Aurora World also
7  has created several marketing brochures, retail store displays and signage, a catalog to
8  present to its potential retail customers, and has developed a costume program.  Fitzhugh
9  Decl., ¶ 12.  Aurora World's marketing and advertising expenditures have totaled
10 approximately $500,000 in Korea and the United States alone in the last few years.
11 Kessler Decl., ¶¶ 5-6.  This number does not account for the close to $1 million Aurora
12 World spent on the YooHoo & Friends animation and website.  *Id.*, ¶¶ 7-8.

13       Aurora World's efforts to promote its new brand met with nearly instant success.
14 The YooHoo & Friends products have generated millions of dollars in revenue
15 worldwide, and have allowed Aurora World to form partnerships with some of the
16 world's largest gift and specialty store retailers, including Claire's Stores, Inc.  Kessler
17 Decl., ¶¶ 9-10 & Exh. C.  As of November 2009, retail sales of Aurora World's YooHoo
18 & Friends products totaled $4.0 million for the year (which does not include sales during
19 the upcoming holiday season), and 2008 retail sales totaled $3.0 million.  *Id.*, ¶ 9.  Aurora
20 World also markets and sells its products to zoos worldwide, which is Aurora World's
21 second largest account type, second only to card and gift stores.  *Id.*, ¶ 11.

22       The YooHoo & Friends products each have a distinct and unique design.  Fitzhugh
23 Decl., ¶ 8.  The YooHoo & Friends characters were developed in early 2006 by Aurora
24 World's Korean parent's product development team.  *Id.*, ¶ 3.  To protect the
25 distinctiveness of the YooHoo & Friends products, Aurora World maintains strict quality
26 control and physical control over the use and distribution of the YooHoo & Friends
27 products.  *Id.*, ¶ 17.  The YooHoo & Friends plush toys, other than key chains, are
28 manufactured solely in Aurora World's own factories in China.  *Id.*  In addition, the

4

1 distinctive eyes found in YooHoo & Friends are tooled per specifications to ensure that
2 they are the correct size and color, with a large pupil design. *Id.*

3 **B.     Aurora World's Copyrights, Trademark, and Trade Dress.**

4          Aurora World owns many copyright registrations for its YooHoo & Friends
5 characters and products. On March 12, 2007, Aurora World obtained United States
6 copyright registration number VA1-406-420 for the "YooHoo" bush baby soft sculpture
7 toys. ¶ 13, Exh. E.  Aurora World has obtained at least nine other copyright registrations
8 for its various other YooHoo & Friends products and characters. Fitzhugh Decl., ¶ 13,
9 Exh. F.

10         The YooHoo & Friends products possess distinctive design and other trade
11 features that have come to be associated with Aurora World in the minds of consumers.
12 (the "YooHoo Trade Dress").  For example, the YooHoo & Friends are designed with
13 distinctive large, round eyes, with large black pupils and colored borders. *Id.*, ¶ 8, Exh.
14 A.  The YooHoo & Friends' eyes are placed close together on the front of each
15 character's face.  The individual characters also possess distinctive and recognizable
16 stitching patterns, expressions, and color elements. *Id.*, ¶ 8, Exh. A.

17         Since 2007, Aurora World has been using the trademarks YooHoo and YooHoo &
18 Friends in connection with the advertising and sale of its YooHoo & Friends plush toys
19 and products in interstate, intrastate and foreign commerce. Fitzhugh Decl., ¶ 14.  The
20 brand name YOOHOO is also an international trademark owned by Aurora World (the
21 "YOOHOO Mark"). *Id.*, ¶ 15, & Exh. G.  In addition, Aurora World currently has an
22 application to register the YOOHOO Mark pending with the United States Patent and
23 Trademark Office, application serial number 79066968. *Id.*, ¶ 16 & Exh. H.

24         Aurora World's continuous and broad use of the YOOHOO Mark and YooHoo
25 Trade Dress has expanded its renown and enabled it to achieve success in the plush toy
26 market.

27

28

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
LA 128.525.695v7 11-19-09

**C.**     **Ty's Infringing Beanie Boos.**

Ty is one of Aurora World's direct competitors in the plush toy market.  Kessler Decl., ¶ 13.  Some time in 2009, Ty released a line of animal plush characters that it named the "Beanie Boos."  *Id.*  The Beanie Boos were first released in the United Kingdom, and recently have been offered for sale in the United States.  *Id.*  Aurora World is aware of at least nine Beanie Boo characters, including bush babies, a penguin, a panda, and a koala.  *Id.*, ¶ 13, Exh. D.  Examples of Ty's Beanie Boos are pictured below:

               

Bush Babies              Panda                   Penguin              Koala

*Id.*

The Beanie Boos are strikingly similar imitations of the YooHoo & Friends characters.  For example, the Beanie Boos (depicted on the right below) contain the same distinctive design elements as the YooHoo & Friends characters (depicted on the left below), including the same large round eyes with large black pupils and colored borders, stitching patterns, and coloration.

                 

Aurora World's YooHoos                              Ty's Beanie Boos

Kessler Decl., Exh. D; Fitzhugh Decl., Exhs. A, I.

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

LA 128,525.695v7 11-19-09

The Beanie Boos are not Aurora World products. Fitzhugh Decl., ¶ 18. Aurora World did not create, manufacture, inspect or package the Beanie Boos, and did not approve the Beanie Boos for sale and/or distribution. *Id.*

**D.      Ty's Infringing Beanie Boos Are Causing Actual Consumer Confusion.**

Since Ty released its Beanie Boos, at least two of Aurora World's customers have commented on the striking similarity between Aurora World's YooHoo & Friends products and Ty's Beanie Boos. Kessler Decl., ¶¶ 14-15, Exhs. E, F. One customer inquired whether Aurora World was making the Beanie Boos for Ty. *Id.*, ¶ 15, Exh. F. Another called the Beanie Boos a "total rip off." *Id.*, ¶ 14, Exh. E.

In addition, at least one toy collector has commented on its website that the Beanie Boos "look very similar to the YooHoos." *Id.*, ¶ 16, Exh. G. Indeed, in an email the toy collectors sent to Aurora World's general information mailbox, the toy collector said she was "immediately struck by the similarity between your YooHoo's and the Ty Boos. I purchased a few of the YooHoos to compare brands and the similarity between Ty's and Aurora's lemurs goes beyond mere coincidence." *Id.* The toy collector then asked if "there is a cross-licensing agreement between Ty and Aurora to produce these cute little critters," and wonders "[w]ho came up with them first; Aurora or Ty?" *Id.* Of course, the answer to the latter question is Aurora World.

**E.      Aurora World's Request to Cease and Desist Infringement and Ty's Refusal to Do So.**

On October 12, 2009, Aurora World advised Ty in writing of Aurora World's ownership of its copyrights and trademarks and demanded that Ty immediately cease and desist from further infringement of the YooHoo & Friends products and YooHoo Trade Dress, and all related activities. Declaration of Wendy M. Mantell ("Mantell Decl."), Exh. A. Ty has failed and refused, and continues to fail and refuse, to comply with Aurora World's request. *Id.*, Exh. B.

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
LA 128,525.695v7 11-19-09

**F.     Ty Is Causing Aurora World Irreparable Harm.**

Ty's unlawful imitations of the YooHoo & Friends products and blatant infringement are damaging Aurora World not only by causing actual confusion and likelihood of confusion in the marketplace, as explained above, but also by diminishing the value of the YooHoo & Friends products by diluting their distinct and unique nature and erroneously associating them with Ty rather than Aurora World.

If Ty is not enjoined immediately from selling its Beanie Boos products, it will continue to trade on the goodwill Aurora World has steadily built through its innovative and unique designs, in effect reaping where it has not sown.

In addition, the upcoming holiday season is far and away the most important season for plush toy companies. Kessler Decl., ¶ 17. Aurora World is trying to market its highly popular and successful YooHoo & Friends line and continue to build its customer base with its unique product. Ty, which holds a significantly larger percentage of the toy market in the United States, is trying to crowd out the YooHoo & Friends products with its Beanie Boos and use its marketing clout to essentially drown out Aurora World's marketing efforts. *Id.*, ¶ 18. If Ty succeeds, Aurora World's entire next year of sales will be affected, because the holiday season is when retailers test how well products will fare in the marketplace, and base future orders on those sales. Moreover, a number of important trade shows take place early in the year, and marketing efforts are affected by momentum generated during the holidays. For these reasons, Aurora World will continue to suffer significant and irreparable harm if Ty is allowed to sell its infringing Beanie Boos through the holiday season and beyond.

**G.     Plaintiff's Commencement of This Lawsuit.**

Following Defendant's refusal to cease and desist its infringing activities and its response that the Beanie Boos do not infringe on Aurora World's copyrights or trademarks, Aurora World commenced this lawsuit on November 17, 2009. In its complaint, Aurora World has alleged claims against Ty for: (1) copyright infringement; (2) trade dress infringement, unfair competition and false designation of origin pursuant

to Section 43(a) of the Lanham Act; (3) unfair competition under California Business and Professions Code § 17200, *et seq.*; (4) common law misappropriation; and (5) common law unfair competition.  Aurora World is seeking all available remedies pursuant to these federal and state laws, including but not limited to preliminary and permanent injunctive relief.  *See* Complaint, filed on November 17, 2009.

### III.
### LEGAL ARGUMENT

#### A.    Legal Standards for Granting a Preliminary Injunction.

"Federal Rule of Civil Procedure 65 permits the issuance of a preliminary injunction to preserve the positions of the parties until a trial on the merits can be conducted." *Conwest Resources, Inc. v. Playtime Novelties, Inc.*, No. C06-5304, 2006 WL 3346226, at *3 (N.D. Cal. 2006), *citing LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006).

A plaintiff seeking a preliminary injunction must demonstrate "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, __ U.S. __, 129 S. Ct. 365, 374 (2008); *see also Stormans, Inc. v. Selecky*, -- F.3d --, No. 07-36039, 2009 WL 3448435, at *13 (9th Cir. 2009) ("The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'") (quoting *Winter*).

"The Court need not conclude that plaintiffs have carried their burden of proof on any single claim or on all claims, only that the proof supports a substantial likelihood of success on at least one claim or theory which in turn would support a preliminary injunction." *Atlanta School of Kayaking, Inc. v. Douglasville-Douglas Cty Water and Sewer Auth.*, 981 F. Supp. 1467, 1472 (N.D. Ga. 1997); *see also Dr. Seuss Enters. v.*

1 | *Penguin Books USA, Inc.,* 109 F.3d 1394, 1397 (9th Cir. 1997) (affirming District
2 | Court's issuance of preliminary injunction when plaintiff demonstrated a likelihood of
3 | success on copyright claims, even though plaintiff could not establish a strong likelihood
4 | of success on trademark claims).

5 |      Aurora World is likely to succeed on the merits of all of its claims against Ty and
6 | will suffer irreparable harm if Ty continues its infringing activities.  Accordingly, the
7 | balance of hardships weighs in favor of Aurora World.  Moreover, in this instance the
8 | public will benefit from injunctive relief.  Because, as set forth below, Aurora World
9 | meets all factors for preliminary relief, Aurora World is entitled to a preliminary
10 | injunction.

11 | **B.**    **Aurora World Is Likely to Succeed on Its Claim For Copyright Infringement.**

12 |      In order to prove direct copyright infringement, "two elements must be proven: (1)
13 | ownership of a valid copyright, and (2) copying of constituent elements of the work that
14 | are original." *Feist Publ'ns  Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)
15 | (*citing Harper & Row, Publishers Inc., v. Nation Enters.*, 471 U.S. 539, 548 (1985)).

16 |      On the first element, a copyright certificate of registration constitutes *prima facie*
17 | evidence of ownership.  *See* 17 U.S.C. § 410(c).  Once such a showing is made, the
18 | burden is shifted to the defendant to prove the invalidity of the copyrights.
19 | *Entertainment Research group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211,
20 | 1217 (9th Cir. 1997).

21 |      On the second element, direct evidence of copying is rare; copying is normally
22 | shown by proving that (a) defendants had *access* to plaintiff's work; and (b) there is a
23 | *substantial similarity* between the works.  *Sid & Marty Krofft Television Prods., Inc. v.*
24 | *McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977).

25 |     **1.**    **Aurora World Owns Valid Copyright Registrations.**

26 |      Aurora World's copyright registration certificates for the YooHoo & Friends
27 | Products are attached as Exhibits E and F to the Declaration of Monica Fitzhugh filed
28 | concurrently with this Motion.  These copyright registration certificates constitute *prima*

*facie* evidence of ownership and copyrightability. Furthermore, Aurora World's creative and expressive depictions of animals in plush toys are copyrightable. *See, e.g., Kamar Int'l v. Russ Berrie & Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981) (citing cases). Copyright protection is afforded to "'expression' that is not dictated by the idea of stuffed animals." *A&A Plush, Inc. v. SKM (USA) Enters. Inc.*, No. CV-97-1113, 1998 WL 441471 at *8 n.8 (C. D. Cal. April 15, 1998).

### 2. Ty Copied Constituent Elements of the YooHoo & Friends Toys.

In order to prove copying occurred, plaintiff must demonstrate "that the defendant had access to the copyrighted items, and that the defendant's product is substantially similar to plaintiff's work." *Kamar*, 657 F.2d at 1062.

#### (a) Ty Had Access to Aurora World's YooHoo & Friends Products.

"Access is proven when the plaintiff shows that the defendant had an opportunity to view of copy the plaintiff's work." *Sid v. Marty Kroft Television v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977). Reasonable access may be proven by circumstantial evidence showing either: (1) a particular chain of events establishing defendant's access to plaintiff's work, or (2) widespread dissemination of plaintiff's work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

Ty had reasonable access to the YooHoo & Friends products, and in particular, the "YooHoo," which was created and first published in the United States in November 2006. Fitzhugh Decl., Exh. E. The YooHoo & Friends products have been marketed globally since that time. The YooHoo & Friends products have enjoyed enormous popularity in the same retail markets in which Ty seeks to promote and market its own products. Among other things, YooHoo & Friends products have been featured on the Claire's website, in addition to on its own website located at www.yoohoofriends.com. YooHoo & Friends also have been featured at trade shows and advertised in trade magazines for the plush toy industry. Thus, given the widespread dissemination of the YooHoo & Friends products, there can be no dispute that Ty had access to them.

1    **(b)    Ty's Beanie Boos Are Substantially Similar to Aurora World's**
2    **YooHoo & Friends.**

3    The Ninth Circuit uses a two-part test to determine whether works are substantially
4    similar.  The "extrinsic" test considers whether two works share a similarity of ideas and
5    expression based on external, objective criteria.  If the plaintiff satisfies the extrinsic test,
6    then the subjective "intrinsic" test asks whether an "ordinary, reasonable observer" would
7    find substantial similarity of expression of the shared idea.  *Cavalier v. Random House,*
8    *Inc.*, 297 F.3d 815, 822-23 (9th Cir. 2002); *see also Apple Computer, Inc. v. Microsoft*
9    *Corp.*, 35 F.3d 1435, 1442-43 (9th Cir. 1994) ("[T]he extrinsic test now objectively
10   considers whether there are substantial similarities in *both* ideas and expression, whereas
11   the intrinsic test continues to measure expression subjectively."); *Kamar*, 657 F.2d at
12   1063 (noting criteria to be considered for extrinsic test are idea similarity, type of
13   artwork, and materials used).

14   Under the intrinsic prong of the test, substantial similarity of expression is found if
15   a reasonable observer would infer that Ty's Beanie Boos capture the "total concept and
16   feel" of Aurora World's designs.  *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 900 (9th Cir.
17   1987) (citing *Krofft,* 562 F.2d at 1164).  "[D]uplication or near identity is not necessary to
18   establish infringement." *Krofft*, 562 F.2d at 1167 (finding defendant's McDonald Land
19   characters were substantially similar to and infringed the H.R. Pufnstuf characters created
20   by the plaintiff and rejecting minor distinctions such as that Pufnstuf wore a cummerbund
21   while Mayor McCheese wore a diplomat's sash).  Furthermore, where, as here, "children
22   are the intended market for the dolls, we must filter the intrinsic inquiry through the
23   perception of children." *Aliotti*, 831 F.2d at 902 .

24   Applying the extrinsic test to this case, it is clear that the two works share a
25   similarity of ideas.  They are both plush toys based on animals, using the same type of
26   material (plush fur material).  But the similarities extend far beyond the idea of a plush
27   stuffed animal, and therefore the Court must consider the similarities in the copyrightable
28   expression of the idea under the intrinsic prong of the test.

12
**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
LA 128.525.695v7 11-19-09

1    Turning to the intrinsic prong of the test, Ty has certainly captured the total
2 concept and feel of Aurora World's designs.  For this prong, it is not appropriate to view
3 the two works "hypercritically or with meticulous scrutiny, but by the observations and
4 impressions of the average reasonable reader and spectator." *Krofft*, 562. F.2d at 1164
5 (*quoting Twentieth Century-Fox Film Corp. v. Stonesifer*, 140 F.2d 579, 582 (9th Cir.
6 1944).  "Analytic dissection" is not appropriate.  *Krofft*, 562. F.2d at 1164.  Looking at
7 the plush toys as a whole, Ty has copied the protectable elements of expression found on
8 the YooHoo & Friends characters.

9    For instance, Ty's Beanie Boos, Cleo and Bubblegum, copy Aurora World's
10 YooHoos' distinctive and fanciful large eye styling, coloration, and stitching designs.
11 Eye styling is a protectable element of expression, since the eye styling is not dictated by
12 the type of animal (or the idea of the animal).  *Aliotti*, 831 F.2d at 901 ("eye style and
13 stitching of the Ding-A-Saurs are not dictated by the idea of stuffed dinosaur dolls and
14 thus constitute protectable expression.").  Courts in this District have found copyright
15 infringement where plush animals are similarly designed.  *See, e.g., The Kyjen Co., Inc.*
16 *v. Vo-Toys, Inc.*, 223 F. Supp. 2d 1065, 1070 (C.D. Cal. 2002) (granting summary
17 judgment and permanent injunction on copyright claim by maker of plush toys
18 resembling a stingray, octopus, dog, rabbit, duck, ball tug, alligator, and ball against a
19 Chinese manufacturer who produced similar versions of the plush toys).

20    Although Ty is sure to bring minor distinctions to the Court's attention in its
21 attempt to defeat this motion, where the animals are similar in size, shape, pose and feel,
22 as they are here, minor differences do not preclude a finding of infringement.  *See, e.g.,*
23 *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 67 (1st Cir. 2009) (granting
24 preliminary injunction to maker of realistic plush tree frogs against former employee who
25 manufactured and sold plush tree frog that was "nearly identical in many material
26 respects, including shape, features, stitching, shading, posture, adornment, and
27 dimensions.").  In *Coquico*, the court found that the following elements of the stuffed
28 frog were protectable: (1) distinctive stitching pattern, (2) idiosyncratic color

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

1  combination, (3) pose, (4) placement of flag stitched on frog's underbelly, and (5) the

2  frog's dimensions, when combined with the other protectable elements. *Id.* at 69 (citing

3  cases); *see also Wildlife Express Corp. v. Carol Wright Sales*, 18 F.3d 502, 511 (7th Cir.

4  1994) (finding that plush animal portions of duffle bags were not generic designs,

5  contained an imaginative artistic expression, and were similar in size, shape, pose and

6  feel and that the differences in the products were of minor importance and did not

7  preclude a finding of infringement); *Original Appalachian Artworks, Inc. v. Toy Loft,*

8  *Inc.*, 684 F.2d 821, 830 (11th Cir. 1982) (affirming finding of substantial similarity

9  between soft-sculpture human baby dolls where the District Court found that the

10  defendant's dolls were "larger, had more hair, larger eyes and a rounder head but were

11  similar to [the plaintiff's] dolls in nearly every other respect."); *Medias & Co., Inc. v. Ty,*

12  *Inc.*, 106 F. Supp. 2d 1132, 1138 (D. Colo. 2000) (finding that the plush duck at issue

13  was substantially similar to Ty's because it had similar unique head and body shapes,

14  similar bright yellow plush fabric, similarly shaped and styled bright orange, less plush

15  flared bill, combined with the same bright orange less plush webbed feet attached directly

16  to the body, similar eyes and eyebrows, and wings); *Gund, Inc. v. Russ Berrie and Co.,*

17  701 F. Supp. 1013, 1019-20 (S.D.N.Y. 1988) (finding minor differences "in combination

18  do not change the facts that the [products] are strikingly similar in their creative

19  expression and 'total concept and feel,'" and that "Defendant's strained listing of minor

20  dissimilarities reinforces what is apparent to the plain eye - that one has to go out of

21  one's way to notice them in light of the strikingly similar impressions of the

22  [products]."); *Dollcraft Indus., Inc. v. Well-Made Toy Manufacturing Company*, 479 F.

23  Supp. 1105 (E.D.N.Y. 1978) (finding that the average lay observer would find substantial

24  similarity between stuffed animals where differences were minor and "appear to be the

25  result of a calculated but thin attempt to disguise the copying of plaintiff's dolls.").

26      As Ty is aware from pursuing and protecting its own intellectual property rights in

27  its popular Beanie Babies, where two plush animals are strikingly similar, as they are

28  here, but not similar to anything in the public domain, *i.e.*, a real animal, it is hard to

14

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

1 | escape a finding of copyright infringement.  *See Ty, Inc. v. GMA Accessories, Inc.*, 132
2 | F.3d 1167 (7th Cir. 1997) (affirming preliminary injunction and finding that defendant's
3 | bean-bag stuffed animals infringed Ty's Beanie Babies because the animals were nearly
4 | identical and the elements copied were protectable).  Looking at the Cleo and Bubblegum
5 | Beanie Boos next to Aurora World's YooHoo bush babies, the similarities are striking
6 | and, as one collector has pointed out, go "beyond mere coincidence."  Kessler Decl., Exh.
7 | G.

8 |       For the reasons set forth above, Plaintiff has met its burden of establishing the
9 | likelihood of success on its copyright claims against Defendant and therefore is entitled
10 | to a preliminary injunction on that basis alone.  However, because Plaintiffs also are
11 | likely to prevail on their Lanham Act and common law claims as well, the factors
12 | favoring the grant of broader injunctive relief are even more compelling.

**C.**   **Aurora World Is Likely to Succeed on Its Claim For Violation of the Lanham
Act.**

15 |       Trade dress, including a product's design, may be a protected mark under the
16 | Lanham Act.  *Wal-Mart Stores, Inc., v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).
17 | An actual trademark is not required to state a claim under Section 43(a) of the Lanham
18 | Act.  *See Smith v. Montoro*, 648 F.2d 602, 605 & n.3 (9th Cir. 1981) (finding that liability
19 | under Section 43(a) may arise for a false description or representation even though no
20 | trademark is involved).  Rather, "adoption of a trade dress confusingly similar to a
21 | competitor's constitutes unfair competition that is actionable under section 43(a) of the
22 | Lanham Act."  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989)
23 | (finding that the district court properly granted a preliminary injunction on clothing
24 | manufacturer's trade dress and trademark claims when a clothing store copied elements
25 | of clothing manufacturer's logo).

26 |       Trade dress, in contrast with trademark, "involves the total image of a product and
27 | may include features such as size, shape, color, color combinations, texture, or graphics."
28 | *Vision Sports, Inc.*, 888 F.2d at 613 (internal quotation omitted); *see also, Gucci*

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
LA 128,525.695v7 11-19-09

1 | *Timepieces America, Inc. v. Yidah Watch Co.*, No. CV-97-6985, 1998 WL 650078, at *6
2 | (C.D. Cal. Aug. 4, 1998) (affirming preliminary injunction on Gucci's trade dress claim
3 | when watch manufacturer copied Gucci's design of a watch with a "G" shaped face by
4 | making watches with "J" or "E" shaped faces).

5 | In order to demonstrate a likelihood of success on a claim for trade dress
6 | infringement, the moving party must show that its claimed trade dress is: (1)
7 | nonfunctional; (2) has acquired a secondary meaning; and (3) is likely to be confused by
8 | members of the consuming public with the infringing use. *See, e.g., Ocean Garden, Inc.*
9 | *v. Marktrade Co., Inc.*, 953 F.2d 500, 508 (9th Cir. 1991) (affirming preliminary
10 | injunction for canned abalone company on trade dress claim where competitor's canned
11 | abalone had similar label).

12 | **1.   Aurora World's YooHoo Trade Dress Is Nonfunctional.**

13 | Aesthetic design features that merely contribute to the consumer appeal and
14 | salability are not functional. *See Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 895-96
15 | (9th Cir. 1983) (affirming directed verdict for carpet manufacturers against another carpet
16 | company that purposefully copied a commercial display folder for residential carpet
17 | business); *Gucci Timepieces*, 1998 WL 650078, at * 3. Factors to consider in
18 | determining functionality include: (1) whether a particular design yields a utilitarian
19 | advantage; (2) whether alternative designs are available in order to avoid hindering
20 | competition; and (3) whether the design achieves economies in manufacture or use.
21 | *Gucci Timepieces*, 1998 WL 650078, at * 3 (*quoting International Jensen, Inc. v.*
22 | *Metrosounds U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993)).

23 | The YooHoo Trade Dress is not functional because the design of the product,
24 | including the large round eyes, coloration, poses of the animals, size and shape of the
25 | animals, and stitching design all contribute to the products' consumer appeal, and do not
26 | yield any particular utilitarian advantage. In addition, clearly there are many alternative
27 | ways to design plush animals that would achieve the same economies in manufacture or
28 | use.

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
LA 128.525.695v7 11-19-09

## 2. Aurora World's YooHoo Trade Dress Has Acquired Secondary Meaning.

Since its launch in late 2006, Aurora World's YooHoo Trade Dress has acquired secondary meaning. "A plaintiff's trade dress acquires secondary meaning when the purchasing public associates the dress with a particular source." *Vision Sports, Inc.*, 888 F.2d at 615. Factors to be assessed in determining secondary meaning include whether actual purchasers associate the product design with its source, the degree and manner of the plaintiff's advertising, and the length and manner of the plaintiff's use of the design. *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989), *cert. den.*, 493 U.S. 872 (1989). "Extensive use and advertising over a substantial period of time is enough to establish secondary meaning." *Id.* (citing *First Brands v. Fred Meyer*, 809 F.2d 1378, 1383 (9th Cir. 1987)). "Proof of exact copying, without any opposing proof," may also be sufficient. *Transgo, Inc., v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985) (citing *Audio Fidelity, Inc., v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 557 (9th Cir. 1960)). Secondary meaning may also be derived from "the 'Gestalt' or overall visual impact of the product." *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 429 (9th Cir. 1979) (affirming ruling on trial on the merits for the maker of "Brut" cologne on its trade dress infringement claim against the maker of "Bravado" cologne, which copied Brut's "total trade dress," including "the bottle shape, color, cap, label, neckband …").

Here, Aurora World has established secondary meaning through its extensive marketing, advertising and promotional efforts. Sales of the YooHoo & Friends Products have exceeded $7 million, and Aurora World has spent over $1 million promoting and advertising its product. Kessler Decl., ¶¶ 5-9. Moreover, it is clear from the evidence of actual confusion in the marketplace, including confusion among Aurora World's own retail customers and collectors of plush toys, that consumers associate the YooHoo & Friends plush toys with Aurora World. *Id.*, ¶¶ 14-16 & Exhs. E-G.

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

LA 128.525.695v7 11-19-09

### 3.   Ty's Beanie Boos Are Likely To Be Confused With Aurora World's YooHoo & Friends Plush Toys.

"Likelihood of confusion in the trade dress context is evaluated by reference to the same factors used in the ordinary trademark context." *Vision Sports, Inc.*, 888 F.2d at 616 (internal citations omitted). To determine whether likelihood of confusion exists, courts in this Ninth Circuit consider the well-known *Sleekcraft* factors (which are non-exhaustive): (1) the similarity of the marks; (2) the relatedness or proximity of the two companies' products or services; (3) the strength of a registered mark; (4) the marketing channels used; (5) the degree of care likely to be exercised by the purchaser selecting goods; (6) the accused infringers' intent in selecting the mark; (7) evidence of actual confusion; and (8) the likelihood of expansion in product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

"[A]t the preliminary injunction stage, 'the trial court is not required to consider all of [the *Sleekcraft* factors]' since the record will not likely be sufficient to permit thorough consideration." *Sony Computer Entertainment America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 984 (N.D. Cal. 1999) (*quoting Apple Computer, Inc. v. Formula Intern., Inc.*, 725 F.2d 521, 526 (9th Cir. 1984)). Thus, a plaintiff only needs to show that it is "likely to be able to show . . . a likelihood of confusion." *GoTo.com, Inc. v. The Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000 (internal quotations omitted).

Here, application of the *Sleekcraft* factors to the facts of this case demonstrate that Plaintiffs will prevail on their Lanham Act and common law claims:

- ***Similarity of Marks.*** In this case, Ty's Beanie Boo product design is substantially similar to Aurora World's YooHoo Trade Dress, as discussed above. Among other things, the products have the same large round eyes with large black pupils and a thin colored circle around the pupil, in many cases employ the same coloration, and similar size, shapes and pose of the animals.

- ***Relatedness of Products/Services.*** Ty's Beanie Boo plush toys are identical products to Aurora World's YooHoo & Friends plush toys and serve identical markets.

18

1    • ***Marketing Channels Used.***  Both Aurora World's toys and Ty's infringing toys
2    are marketed and sold to retailers, including specialty gift shops and zoos, and both are
3    marketed worldwide and through the Internet.
4    • ***Degree of Care.***  Consumers purchasing small, relatively inexpensive toys for
5    children, usually at the request of a child, are unlikely to exercise the same degree of care
6    of consumers purchasing expensive, "big ticket" items.  Thus, this factor tips in favor of
7    Plaintiff.
8    • ***Strength of the Mark.***  Aurora World has been using the YooHoo Trade Dress
9    continuously throughout the world in connection with its high-quality and innovative toy
10   products since its launch in late 2006.  Likewise, through its extensive marketing,
11   advertising and promotional efforts, the YooHoo Trade Dress has been identified with
12   Aurora World in the minds of consumers, particularly, Aurora World's retail customers.
13   • ***Infringers' Intent.***  The striking similarity of the products is evidence that Ty
14   intended to crowd the marketplace with similar product and diminish the success that
15   Aurora World had been having with its YooHoo & Friends products.
16   • ***Evidence of Actual Confusion.***  Generally, evidence of actual confusion is "rarely
17   available at the Preliminary Injunction stage."  *Electropix, Inc. v. Liberty Livewire Corp.,*
18   178 F. Supp. 2d 1125, 1132 (C.D. Cal. 2001).  Here, however, Plaintiff has received
19   emails from consumers who have wondered whether Aurora World was manufacturing
20   Ty's Beanie Boos, and plush toy collectors in the blogosphere have noted the similarity
21   of the products.  Kessler Decl., ¶¶ 14-16 & Exhs. E-G.
22   • ***Likelihood of Expansion In Product Lines.***  This factor is not relevant here
23   because Defendant is already selling products that are directly competitive with those of
24   Plaintiff.
25        Ty may argue that confusion is not likely because Beanie Boos contain Ty's hang
26   tags and trademarks.  However, the consumers of these products are mostly children, who
27   are less likely to pay attention to hang tags, and more likely to remove the hang tags
28   before playing with the products.  Therefore, even if confusion does not result at the

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

1  point of sale (although given the similarities with Aurora World's products, such

2  confusion also is likely), other children playing with the products are likely to be

3  confused as to whether the plush toys are Aurora World's YooHoo & Friends products or

4  Ty's Beanie Boos, given the toys' similarities. "The law in the Ninth Circuit is clear that

5  'post-purchase confusion,' *i.e.*, confusion on the part of someone other than the purchaser

6  who, for example, simply sees the item after it has been purchased, can establish the

7  required likelihood of confusion under the Lanham Act." *Karl Storz Endoscopy*

8  *America, Inc. v. Surgical Technologies, Inc.* 285 F.3d 848, 854 (9th Cir. 2002). For

9  these reasons, Plaintiffs are likely to show likelihood of confusion, and by extension, a

10  likelihood of success on the merits of their claims.

11  **D.  Aurora World Is Likely to Succeed on Its Statutory and Common Law Unfair**

12  **Competition Claims.**

13  California law provides broad consumer protection for misleading and unfair

14  practices. *See* Cal. Bus. & Prof. Code § 17200, *et seq.* Section 17200 provides a private

15  cause of action for any unlawful, unfair, or fraudulent business practice. *Id.*; *see also*

16  *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 987 (9th Cir. 2002). The

17  legislature intended this "sweeping language" to include "anything that can properly be

18  called a business practice and that at the same time is forbidden by law." *Id.* (quoting

19  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992)). The statute "governs

20  'anti-competitive business' practices as well as injuries to consumers." *Cel-Tech*

21  *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). To state a

22  claim under the act, one need not prove the elements of a tort. Instead, one need only

23  show that "'members of the public are likely to be deceived.'" *Bank of the West*, 2 Cal.

24  4th at 1267.

25  The test for Plaintiff's statutory and common law unfair competition claims is

26  materially the same as the test for the Lanham Act: whether there is a likelihood of

27  confusion. *See, e.g., Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th

28  Cir. 1988) ("common law and statutory trade-mark infringements are merely specific

1  aspects of unfair competition, and trade name infringement is part of the larger tort of
2  unfair competition and it is based on considerations similar to trade-mark infringement.")
3  (internal quotations and citations omitted); *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d
4  788, 793 (9th Cir. 1981).

5       As set forth above, because Ty's Beanie Boos are likely to be confused, and have
6  been confused, with Aurora World's YooHoo & Friends products.  Thus, Aurora World
7  is likely to succeed on its statutory and common law unfair competition claims.

8  **E.**    **Aurora World Is Likely to Succeed on Its Claim for Common Law**
9      **Misappropriation.**

10       Common law misappropriation "includes acts analogous to 'passing off,' such as
11  the sale of confusingly similar products, by which a person exploits a competitor's
12  reputation in the market." *Bank of the West,* 2 Cal. 4th at 1263 (internal citations
13  omitted).  "'Common law misappropriation is one of a number of doctrines subsumed
14  under the umbrella of unfair competition.  It is normally invoked in an effort to protect
15  something of value not otherwise covered by patent of copyright law, trade secret law, or
16  breach of confidential relationship, or some other form of unfair competition.'" *City*
17  *Solutions Inc. v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835, 842 (9th Cir. 2004)
18  (*quoting United States Golf Ass'n. v. Arrongo Software Corp.*, 69 Cal. App. 4th 607, 618
19  (1999).

20       The elements of a cause of action for common law unfair competition under
21  California law are: (1) that plaintiff invested substantial time, skill or money in
22  developing its property; (2) that defendant appropriated and used plaintiff's property; (3)
23  that defendant's appropriation and use of plaintiff's property was without authorization
24  or consent of plaintiff; and (4) that plaintiff has been injured by defendant's conduct. *See*
25  *City Solutions*, 365 F.3d at 842; *see also, United States Golf Ass'n*, 69 Cal. App. 4th at
26  618 (citing elements).

27       Aurora World has established that it has invested substantial time and money in
28  developing the YooHoo & Friends brand and products.  Indeed, the evidence is clear that

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**
LA 128,525,695v7 11-19-09

1  Aurora World has spent more than $1.5 million promoting its brand.  Kessler Decl., ¶¶ 5-
2  8.  In manufacturing and selling the strikingly similar Beanie Boos, Ty has appropriated
3  and used Aurora World's intellectual property.  Aurora World did not consent to Ty's use
4  of the same design elements of its plush toys.  Aurora World has been harmed by this
5  conduct because it has been deprived of its intellectual property rights, and has suffered
6  harm to its goodwill and reputation in the minds of its consumers.  Hence, Aurora World
7  also is likely to succeed on its claim for common law misappropriation.

8  **F.  Aurora World is Suffering Irreparable Harm As a Result of Ty's Wrongful**
9      **Conduct.**

10         Traditionally, irreparable harm has been presumed in intellectual property cases
11  once an intellectual property owner has been able to establish a likelihood of success on
12  the merits of its claims.  *See, e.g., Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d
13  1330, 1335 (9th Cir. 1995) (determining that in a copyright infringement case, "[a]
14  showing of reasonable likelihood of success on the merits raises a *presumption* of
15  irreparable harm").  At least one patent case has called that presumption into question.
16  *See eBay v. MercExchange, LLC*, 547 U.S. 388, 393-94 (2006).  However, that patent
17  case does necessarily not apply to other intellectual property cases.  *See, e.g., Amado v.*
18  *Microsoft Corp.*, No. SAVC 03-0242, 2007 U.S. Dist. LEXIS 96487 (C.D. Cal. 2007)
19  (applying presumption of irreparable harm to copyright case); *see also, Jacobsen v.*
20  *Katzer*, 535 F.3d 1373, 1378 (Fed. Cir. 2008) (applying old Ninth Circuit rule that
21  irreparable harm may be presumed if a copyright holder has demonstrated a likelihood of
22  success on the merits in a post-*MercExchange* copyright case).

23         Regardless, Aurora World is suffering irreparable harm in this case due to the loss
24  of control over its commercial exploitation of intellectual property rights and its loss of
25  reputation and goodwill.  *See, e.g., United States Olympic Comm. v. Xclusive Leisure &*
26  *Hospitality Ltd.*, No. C 08-03514, 2008 WL 3971120, at * 10 (N.D. Cal. Aug 25, 2008)
27  (citing *Apple Computer, Inc. v. formula Int'l, Inc.*, 725 F.2d 521, 526 (9th Cir. 1984));
28  *see also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008)

(finding that irreparable harm existed in a trademark case when (1) the monetary value of the injury was sizeable, (2) there was a threat to potential business in a market where plaintiff evidenced a clear interest in doing business, (3) a small community made up plaintiff's potential customer base, (4) the customer base may have been confused by trademark infringement, (5) there was a threat to plaintiff's goodwill and the value of its mark because infringing company was continually modifying its product, and (6) plaintiff had lost control of the quality of product being associated with its mark).  On a copyright infringement claim, plaintiff may also "establish an irreparable harm stemming from the infringement (e.g., loss of market share, reputational harm)." *Apple Inc. v. Psystar Corp.,* -- F. Supp. 2d --, No. C08-0321, 2009 WL 3112080, at *3 (N.D. Cal. Sep. 23, 2009) (holding that in trademark cases irreparable harm may be presumed, but must be independently established for copyright cases).  Lost sales such as those Aurora World has and will continue to suffer if Ty is permitted to continue to sell its infringing products "are virtually impossible to establish hereafter." *Gund,* 701 F. Supp. at 1025 (internal quotation omitted).

Owners of intellectual property have a "moral right" "to the preservation of the integrity of his work." *GMA Accessories,* 132 F.3d at 1173.  It has taken Aurora World laborious effort and significant time and resources to build up the goodwill, reputation, and trust that it currently enjoys among its customers and within the toy industry. Differences in appearance and quality control of the Beanie Boos impair the goodwill Aurora World has built up in its YooHoo & Friends products, which itself constitutes irreparable harm to Aurora World. *Id.*  Hence, Aurora World will be irreparably harmed if Ty is permitted to continue to market its infringing Beanie Boo toys.

This harm will be particularly apparent if Ty is not enjoined from selling its infringing products now, because the gift and specialty toy industry is about to enter the height of holiday sales, which affects orders for the coming year.  Kessler Decl., ¶ 17. Hence, Aurora World is entitled to a preliminary injunction to prevent this irreparable harm that stems from Ty's unauthorized infringement.

LA 128,525.695v7 11-19-09

1    Aurora World's irreparable harm is further heightened by Ty's significant market
2    presence in the plush toy industry and its concomitant ability to drown out Aurora
3    World's YooHoo & Friends marketing efforts and products. Kessler Decl., ¶ 18. Indeed,
4    as noted above, consumers already are being confused with respect to the Beanie Boo
5    and the YooHoo & Friends plush toys. Kessler Decl., ¶¶ 14-16, Exhs. E-G. Thus, Ty's
6    efforts to essentially piggyback on the success of the YooHoo & Friends disrupts Aurora
7    World's efforts to successfully market and sell its products and garner the fruits of its
8    labor.

9    **G.    The Balance of Hardships Favors Aurora World.**

10    The balance of hardships overwhelmingly tips in Plaintiff's favor. Aurora World
11    has spent years establishing goodwill with consumers and retailers alike and a reputation
12    for high-quality, unique toy products. Indeed, the YooHoo & Friends brand has
13    expanded to include many peripheral products with which Aurora World is enjoying
14    great success. The potential harm posed by Defendant's activities is therefore significant
15    and difficult to quantify. Thus, any detriment caused to Plaintiff as a result of
16    Defendant's deliberate attempt to crowd the market and diminish the uniqueness of the
17    YooHoo & Friends products represents a major hardship on Plaintiff. By contrast, no
18    legitimate interest is served by allowing Defendant to continue deceiving consumers
19    (particularly children and adults shopping for gifts for children), and therefore, Plaintiff is
20    entitled to a preliminary injunction based on this factor as well.

21    **H.    A Preliminary Injunction Enjoining Ty From Continuing to Engage in**
22    **Wrongful and Infringing Conduct Serves the Public Interest.**

23    It is "virtually axiomatic that the public interest can only be served by upholding
24    copyright protections, and correspondingly, preventing the misappropriation of the skills,
25    creative energies, and resources which are invested in the protected work." *Apple*
26    *Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983)
27    (*quoting Klitzner Indus., Inc. v. H.K. James & Co.*, 535 F. Supp. 1249, 1259-60 (E.D. Pa.
28    1982)). Likewise, "[w]here a defendant's concurrent use of plaintiff's trademark without

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *AT&T Corp. v. Vision One Security Sys.*, No. 95-0565, 1995 WL 476251, at \*7 (S.D. Cal. July 27, 1995); *see also, Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993-94 (9th Cir. 2009) (noting the usual public interest concern in trademark cases is avoiding confusion to consumers).

There is no interest to be served in allowing Ty to diminish Aurora World's success by crowding the market with an infringing product. Indeed, while Ty has enjoyed a large percentage of the market share in this particular market, the public interest is served when a competitor enters the market with an innovative product that increases competition, which ultimately is better for consumers. Hence, the public interest weighs in favor of issuing an injunction.

## IV.

## CONCLUSION

For the foregoing reasons, Aurora World respectfully submits that the issuance of a preliminary injunction is just and appropriate in this case, and respectfully requests that the Court enter a preliminary injunction enjoining Ty from creating, manufacturing, offering for sale, or selling its infringing Beanie Boo products as set forth in the proposed preliminary injunction lodged concurrently with this Motion.

DATED: November 19, 2009

GREENBERG TRAURIG LLP

By: _____

Vincent H. Chieffo
Raymond B. Kim
Wendy M. Mantell

Attorneys for Plaintiff
Aurora World, Inc.

**AURORA WORLD, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

LA 128,525,695v7 11-19-09

**PROOF OF SERVICE**

**STATE OF CALIFORNIA,**

**COUNTY OF LOS ANGELES:**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **2450 Colorado Avenue, Suite 400E, Santa Monica, CA 90404.**

On November 19, 2009, I served copies of **AURORA WORLD, INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

DONNA M SNOPEK
280 CHESTNUT AVE.
WESTMONT, IL  60559

James P. White
Husch Blackwell Sanders Welsh & Katz, LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL  60606-3912

☒ **(BY ELECTRONIC MAIL)**
On the below date prior to 5:00 p.m. PST, I transmitted the foregoing document(s) by electronic mail, and the transmission was reported as complete and without error. A true and correct copy of the electronic transmission is attached  to this declaration. This method of service was made pursuant to the agreement of counsel.

☒ **(BY PERSONAL SERVICE)**
I caused to be delivered such envelope by hand to the addressee noted above. Executed on November 19, 2009, at Santa Monica, California.

☒ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 19, 2009, at Santa Monica, California.

ALMA R. RINCON

LA 128,525,695v7 11-19-09